# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAM MANNINO ENTERPRISES, INC., *et al.*, | No. 4:19-CV-02075 |
| Plaintiffs, | (Chief Judge Brann) |
| v. | |
| CIT RAILCAR FUNDING COMPANY, LLC, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

**MARCH 10, 2022**

## I.   BACKGROUND

Sam Mannino Enterprises, Inc. and Sam Mannino Enterprises LLC, d/b/a Investors First Capital ("Plaintiffs") sued CIT Railcar Funding Company, LLC and The CIT Group/Equipment Financing, Inc. ("Defendants") in the Court of Common Pleas of Centre County, Pennsylvania, alleging tortious interference with contractual relations (Count One) and tortious interference with prospective business relations (Count Two), related to Plaintiffs' failure to complete a railcar lease agreement with Anadarko Petroleum Corporation ("Anadarko"). Defendants thereafter removed the matter to this Court.[1] Upon the conclusion of discovery, Defendants moved for summary judgment which Plaintiffs opposed, in part, on the ground that they

---

[1]   Doc. 1.

required further discovery from Angela Harmon related to her role in negotiating and leasing railcars from Defendants to Anadarko.[2]

This Court granted in part Defendants' motion for summary judgment, and entered judgment in their favor as to Count One.[3] The Court denied without prejudice summary judgment as to Count Two and instead permitted Plaintiffs to seek additional discovery from Harmon.[4] That discovery has since been completed, and Plaintiffs deposed Harmon.[5]

Defendants have now filed a second motion for summary judgment—as permitted by this Court's prior Order—seeking judgment on Count Two.[6] Defendants note that the discovery Plaintiffs conducted related to Harmon is consistent with the evidence and facts presented in Defendants' prior motion for summary judgment, and Defendants therefore rely upon those facts and arguments in their second motion for summary judgment.[7] Plaintiffs have not responded to the second motion for summary judgment, and the time to so do has passed. Accordingly, this matter is ripe for disposition and, for the following reasons, the motion will be granted.

---

[2] Docs. 15, 23.
[3] Doc. 32 at 12-13.
[4] *Id.* at 3-6.
[5] *See* Doc. 34 at 2.
[6] Doc. 34.
[7] *Id.*

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[9] To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's favor.[10] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[11]

Furthermore, this motion for summary judgment is unopposed. As this Court discussed with respect to the prior motion for summary judgment, under the Court's Local Rules, when a party does not file a brief in opposition to a motion, it is "deemed not to oppose such motion."[12] This Court, however, must still satisfy itself that summary judgment would be appropriate based on the traditional standard

---

[8] Fed. R. Civ. P. 56(a).
[9] *Lichtenstein v. Univ. of Pittsburgh Medical Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986)).
[10] Fed. R. Civ. P. 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.
[11] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).
[12] M.D. Pa. Local Rule 7.6.

outlined above. A merits analysis is generally necessary, even if a motion for summary judgment is unopposed.[13]

### B. Undisputed Facts[14]

Both Plaintiffs and Defendants do business leasing railcars.[15] In April 2015, Anadarko contacted Defendants to lease Defendants' railcars for an upcoming project in Pennsylvania.[16] Over the following months, Anadarko and Defendants negotiated terms of the potential lease; Angela Harmon negotiated on behalf of Defendants, while Chad Bruinooge spoke for Anadarko.[17] Talks ceased but, a few months later, Anadarko resumed negotiations with Defendants after discussions with another company broke down.[18] Eventually Anadarko and Defendants signed a lease agreement wherein Defendants leased thirty railcars to Anadarko.[19]

At no point during the negotiations between Defendants and Anadarko did Bruinooge, or anyone else from Anadarko or any third party, inform Defendants that Anadarko was negotiating with Plaintiffs for the lease of railcars.[20] During the

---

[13] *See Tomasovitch v. Cinram Mfg., Inc.*, 2008 WL 5233612 at *1 (M.D. Pa. Dec. 15, 2008) (citing *Anchorage Assoc. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 174 (3d Cir. 1990)).
[14] Pursuant to this Court's Local Rules, for motions for summary judgment all "material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted" by a statement filed by the opposing party. M.D. Pa. Local Rule 56.1. Plaintiffs have not filed a response to Defendants' second motion for summary judgment, and all of Defendants' material facts are therefore deemed admitted.
[15] Doc. 16 ¶¶ 1-2.
[16] *Id.* ¶ 3.
[17] *Id.* ¶ 4.
[18] *Id.* ¶ 6-7.
[19] *Id.* ¶ 8-9.
[20] *Id.* ¶ 10.

negotiations between Defendants and Anadarko, Harmon never learned "of the proposed lease terms offered by the . . . Plaintiffs to Anadarko."[21] During her dealings with Anadarko, Harmon further "had no knowledge of any contract that was entered into between the . . . Plaintiffs and Anadarko," nor did Bruinooge inform Harmon that Anadarko had entered into a contract with Plaintiffs to lease railcars.[22]

### C.  Analysis

Under Pennsylvania state law, to demonstrate interference with a prospective business relationship, a plaintiff must establish four elements: "(1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damages resulting from the defendant's conduct."[23] Here, Plaintiffs have failed to establish a genuine issue of material fact as to either the second or third elements.

With regard to whether Defendants held the purpose or intent to harm Plaintiffs by preventing a relationship between Plaintiffs and Anadarko from occurring, a defendant must act with the specific intent "to interfere with the prospective contract in question—*i.e.,* based upon, at a minimum, knowledge that the consequences were certain, or substantially certain, to result from its actions."[24]

---

[21] *Id.*

[22] *Id.* ¶ 13.

[23] *Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261, 1275 (Pa. Super. Ct. 2012) (quoting *Thompson Coal Co. v. Pike Coal Co.,* 412 A.2d 466, 471 (Pa. 1979)).

[24] *Id.* at 1276 (brackets and internal quotation marks omitted).

5

However, this element "must be understood as requiring only an intention to interfere with the plaintiff's prospective contractual relation, and not malevolent spite by the defendant."[25] Such intent has been found where "defendants' actions were done with the knowledge and intent to interfere with plaintiff's ability to obtain business [or where defendants' actions] were willful, malicious and solely for the purpose of destroying plaintiff."[26]

    Here, there is no evidence that Defendants acted with any intent to interfere with a contract between Plaintiffs and Anadarko. To the contrary, Defendants were unaware of the third party with whom Anadarko had previously negotiated, and had been informed that said negotiations had hit "a snag" that necessitated Anadarko restart negotiations with Defendants after an approximately three-month break in negotiations.[27] Although Plaintiffs speculate that a third party at Alexander Capital shared with Defendants the lease proposal from Plaintiffs to Anadarko, Plaintiffs offer nothing but speculation to support this assertion. And contrary to Plaintiffs' assertion, it is undisputed that Harmon—Defendants' negotiator with Anadarko—did not communicate with anyone at Alexander Capital.[28] Given the absence of any evidence that Defendants intended to interfere with Plaintiffs' prospective

---

[25] *Ruffing v. 84 Lumber Co.*, 600 A.2d 545, 550 (Pa. Super. Ct. 1991) (internal quotation marks omitted).
[26] *Silver v. Mendel*, 894 F.2d 598, 602 (3d Cir. 1990) (internal quotation marks omitted).
[27] Doc. 16 ¶¶ 5-7.
[28] *Id.* ¶ 12.

contractual relation with Anadarko, Plaintiffs have not sustained their burden of proof as to the second element of their claim.

With respect to the question of whether there is an absence of privilege or justification on the part of Defendants, this element "simply imports purposeful interference without justification."[29] "Thus, in order to succeed in a cause of action for tortious interference with a contract, a plaintiff must prove not only that a defendant acted intentionally to harm the plaintiff, but also that those actions were improper."[30] "When a defendant acts at least in part to protect some legitimate concern that conflicts with an interest of the plaintiff, a line must be drawn and the interests evaluated. The central inquiry in the evaluation is whether the interference is sanctioned by the rules of the game which society had adopted defining socially acceptable conduct which the law regards as privileged."[31] Consequently, "the relevant inquiry must focus on the *propriety* of a defendant's conduct considering the factual scenario as a whole."[32]

"In determining whether a defendant's actions were improper, the trial court must take into account" several factors, including "the nature of the actor's conduct," "the actor's motive," "the interests of the other with which the actor's conduct

---

[29] *Ruffing*, 600 A.2d at 550 (internal quotation marks omitted).
[30] *Salsgiver Commc'ns, Inc. v. Consol. Commc'ns Holdings, Inc.*, 150 A.3d 957, 966 (Pa. Super. Ct. 2016).
[31] *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 185 (3d Cir. 1997) (brackets and internal quotation marks omitted).
[32] *Id.* (internal quotation marks omitted).

interferes," "the interests sought to be advanced by the actor," "the social interests in protecting the freedom of action of the actor and the contractual interests of the other," "the proximity or remoteness of the actor's conduct to the interference," and "the relations between the parties."[33]

An analysis of those factors demonstrates that Plaintiffs have failed to sustain their burden of proof in this matter. First, Defendants' conduct here is fairly innocuous, as they negotiated with Anadarko in good faith, believing that negotiations between Plaintiffs and Anadarko had hit "a snag."[34] Second, there is no indication that Defendants' motive was improper, or that they acted in a manner that was not aboveboard. The third and fourth factors likewise weigh against Plaintiffs, as the interests of Plaintiffs and Defendant were monetary only—they were competitors in the same field seeking a railcar lease contract. Next, there is a strong social interest in protecting Defendants' ability to compete for business—particularly when no contract had been signed between Plaintiffs and Anadarko, negotiations between Plaintiffs and Anadarko had broken down, and Anadarko was simply trying to obtain the best terms possible for its lease of railcars. Finally, there is no evidence of any actual interference here, which weighs in favor of Defendants.

In sum, the undisputed facts demonstrate that two of the factors required to demonstrate interference with prospective contractual relations are absent.

---

[33] *Id.* (quoting Restatement (Second) of Torts § 767).
[34] Doc. 16 ¶ 6.

Consequently, Defendants are entitled to summary judgment as to Count Two of the complaint, and their second motion for summary judgment will be granted.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' second motion for summary judgment.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge